UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

BRIAN WYNN, JOHN WILLIAMS,
AWILDA GUZMAN, JOSE OTERO, and
KEVIN FULTON,

                    **Plaintiffs,**

      - against -

THE NEW YORK CITY HOUSING
AUTHORITY,

                    **Defendant.**

-------------------------------------------------------- X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: 7/29/15 |

**OPINION AND ORDER**

**14-cv-2818 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

      Brian Wynn, John Williams, Awilda Guzman, Jose Otero, and Kevin

Fulton bring this action alleging that their employer, the New York City Housing

Authority ("NYCHA"), has been systematically under-compensating them due to

their race and/or ethnicity.  Plaintiffs assert causes of action for violations of their

civil rights under section 1981 of title 42 of the United States Code as well as the

New York City Human Rights Laws ("NYCHRL").  NYCHA now moves to

dismiss all claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)

of the Federal Rules of Civil Procedure, and for failure to state a claim upon which

relief can be granted pursuant to Rule 12(b)(6).  Plaintiffs cross-move for leave to amend their Complaint in order to: (1) bring this case as a class action lawsuit; (2) add the local chapter of their union, Local 237 of the International Brotherhood of Teamsters (the "Union"), as a defendant; and (3) assert additional causes of action. For the reasons set forth below, NYCHA's motion to dismiss is GRANTED in part and DENIED in part, and plaintiffs' cross-motion for leave to amend is GRANTED in part and DENIED in part.

## II.    BACKGROUND[1]

Plaintiffs are all minorities – either Black or Hispanic – who reside in New York.[2]  All plaintiffs are currently employed by NYCHA and perform the job duties of Plasterer Tenderers, also known as Plasterer Helpers.[3]  Plaintiffs have held their respective jobs at NYCHA for varying lengths of time, ranging from a low of approximately twelve to a high of approximately seventeen years.[4]

Plaintiffs contend that NYCHA discriminates against them on the

---

[1]     The facts below are drawn from the Complaint ("Compl.").

[2]     *See* Compl. ¶¶ 5-9.

[3]     *See id.* ¶¶ 11-24.  Plasterer Tenderers perform a variety of functions to assist Plasterers.  *See id.* ¶ 26.

[4]     *See id.* ¶¶ 11-24.

basis of their race or ethnicity by failing to pay them prevailing wages.[5]  Further,

plaintiffs allege that NYCHA attempts to disguise its employment practices by

assigning to plaintiffs the job title "Caretaker P" instead of Plasterer Tenderer.[6]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert by

motion the defense that a court lacks subject-matter jurisdiction to hear a claim.

Federal courts have limited subject-matter jurisdiction.[7]  "The plaintiff bears the

burden of proving subject-matter jurisdiction by a preponderance of the evidence."[8]

Courts also have an "independent obligation to establish the existence of subject-

matter jurisdiction."[9]  In considering a motion to dismiss for lack of subject-matter

jurisdiction, the court "must take all uncontroverted facts in the complaint [] as

true, and draw all reasonable inferences in favor of the party asserting

---

[5]      *See id.* ¶¶ 1, 27, 36.

[6]      *See id.* ¶ 35.

[7]      *See In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d
378, 392 (S.D.N.Y. 2014) (citing *Purdue Pharma L.P. v. Kentucky,* 704 F.3d 208,
213 (2d Cir. 2013)).

[8]      *Al-Khazraji v. United States*, 519 Fed. App'x 711, 713 (2d Cir. 2013)
(citing *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012) (quotation marks
omitted)).

[9]      *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d at 385.

3

jurisdiction."[10]  However, in cases where the defendant challenges the factual basis of the plaintiff's assertion of jurisdiction, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'"[11]

### B.    Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[12]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[13]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[14]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[10]     *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

[11]     *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

[12]     *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[13]     *See* 556 U.S. 662, 678-79 (2009).

[14]     *Id.* at 679.

4

suffice."[15]   Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[16]   A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]   Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[18]

When deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[19]   A court may also consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[20]

## C.   Leave to Amend

---

[15]      *Id.* at 678 (citation omitted).

[16]      *Id.* at 679.

[17]      *Id.* at 678 (citation omitted).

[18]      *Id.* (quotation marks omitted).

[19]      *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[20]      *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[21]  Although "[t]he Court should freely give leave when justice so requires,"[22] it is "within the sound discretion of the district court to grant or deny leave to amend."[23]  When a motion to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[24]  Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[25]  Additionally, "[a]n amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)."[26]

## IV.   APPLICABLE LAW

---

[21]   *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[22]   Fed. R. Civ. P. 15(a)(2).

[23]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

[24]   *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[25]   *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[26]   *Lucente v. International Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

A.     **Section 1981**

Section One of the Civil Rights Act of 1866, as codified in section

1981 of title 42 of the United States Code ("Section 1981"), provides that:

> All persons within the jurisdiction of the United States shall have
> the same right in every State and Territory to make and enforce
> contracts . . . and to the full and equal benefit of all laws and
> proceedings for the security of persons and property as is enjoyed
> by white citizens.[27]

In order to establish a claim under Section 1981, "a plaintiff must

allege facts in support of the following elements: (1) the plaintiff is a member of a

racial minority; (2) an intent to discriminate on the basis of race by the defendant;

and (3) the discrimination concerned one or more of the activities enumerated in

the statute[.]"[28]  Regarding the third element, Section 1981 "outlaws discrimination

with respect to the enjoyment of benefits, privileges, terms, and conditions of a

contractual relationship, such as employment."[29]

The Second Circuit has held that "the same 'core substantive

standards that apply to claims of discriminatory conduct in violation of Title VII

[of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*] are also applicable to

---

[27]     42 U.S.C. § 1981.

[28]     *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1097
(2d Cir. 1993).

[29]     *Patterson v. County of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004).

claims of discrimination in employment in violation of [Section] 1981[.]'"[30]  "In an employment discrimination case, a plaintiff has the burden at the outset 'to prove by a preponderance of the evidence a prima facie case of discrimination.'"[31]

In order to state a prima facie case of discrimination, a plaintiff must show that: "(1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an inference of discrimination based on her membership in a protected class."[32]  A plaintiff may establish the final element by showing that "a similarly situated person not in the protected class was treated more favorably than the plaintiff."[33]  In this regard, "the plaintiff must show that she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself."[34]  However, "what constitutes 'all material respects'

---

[30]     *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (quoting *Patterson*, 375 F.3d at 225).

[31]     *Collins v. New York City Trans. Auth.*, 305 F.3d 113, 118 (2d Cir. 2002) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

[32]     *Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 242 (S.D.N.Y. 2011) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009)).

[33]     *Id.* (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997)).

[34]     *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2001) (quoting *Shumway*, 118 F.3d at 64).

[] varies somewhat from case to case[.]"[35] A plaintiff need not show that the

individual with whom she seeks comparison is similarly situated "in *all* respects."[36]

Thus, "where a plaintiff seeks to establish the minimal prima facie case by making

reference to the disparate treatment of other employees, those employees must

have a situation sufficiently similar to plaintiff's to support at least a minimal

inference that the difference of treatment may be attributable to discrimination."[37]

### B.    Section 1983

Section 1983 of title 42 of the United States Code ("Section 1983")

states, in relevant part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .[38]

"'To state a claim under [Section] 1983, a plaintiff (1) must allege the

---

[35]    *Id.*

[36]    *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (citation omitted).

[37]    *Id.* at 54.

[38]    42 U.S.C. § 1983.

violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law.'"[39]  Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[40]

The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike."[41]  To establish an Equal Protection claim, a plaintiff must prove "(1) that he or she was treated differently from other similarly situated individuals, and (2) that the 'treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"[42]  Moreover, the discrimination must be purposeful.[43]

### C.   Municipal Liability

---

[39]    *Gleason v. Scoppetta*, 566 Fed. App'x 65, 68 (2d Cir. 2014) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

[40]    *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

[41]    *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[42]    *Bush v. City of Utica, N.Y.*, 558 Fed. App'x 131, 134 (2d Cir. 2014) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

[43]    *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

"When the defendant sued for discrimination under [Section] 1981 or Section] 1983 is a municipality . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom[.]"[44]  A municipality may not be found liable simply because one of its employees or agents is guilty of some wrongdoing.[45]

In the absence of an established written municipal policy, a plaintiff must prove that a practice "'was so persistent or widespread as to constitute a custom or usage with the force of law,'"[46] or that a practice or custom of subordinate employees was "'so manifest as to imply the constructive acquiescence of senior policy-making officials.'"[47]

Thus, municipal liability may be established through evidence that "the municipality's practice, as opposed to its formal policy, is to engage in the

---

[44]     *Patterson*, 375 F.3d at 226 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989); *Monell v. Department of Soc. Services*, 436 U.S. 658, 692-94 (1978)).

[45]     *See Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011).

[46]     *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson*, 375 F.3d at 226) (other quotation marks omitted).

[47]     *Id.* (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

constitutional violation at issue."[48]  Finally, the policy or custom must be the

"moving force" behind the injury alleged.[49]

### D.     New York City Human Rights Law

The NYCHRL prohibits employers from discriminating against any

person "in compensation or in terms, conditions or privileges of employment" on

the basis of, *inter alia*, "race, creed, color, [or] national origin[.]"[50]  Courts must

analyze NYCHRL claims "separately and independently from any federal and state

law claims."[51]  The New York City Council amended the NYCHRL in 2005,

directing that "[t]he provisions of [the NYCHRL] shall be construed liberally for

the accomplishment of the uniquely broad and remedial purposes thereof."[52]  Thus,

the provisions of the NYCHRL should be construed "'broadly in favor of

discrimination plaintiffs, to the extent that such a construction is reasonably

---

[48]      *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113,
125–26 (2d Cir. 2004)).

[49]      *See Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

[50]      NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

[51]      *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109
(2d Cir. 2013) (citing *Hernandez v. Kaisman*, 957 N.Y.S.2d 53, 58 (1st Dep't
2012)) (citations omitted).

[52]      Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85
(2005) (the "Restoration Act") § 1.

possible.'"[53]

## V.    DISCUSSION

### A.    Subject Matter Jurisdiction

NYCHA argues plaintiffs' claims are governed by the grievance and arbitration procedures outlined in the collective bargaining agreement ("CBA") between NYCHA and the Union.[54]  According to NYCHA, this Court lacks subject matter jurisdiction to hear plaintiffs' claims because plaintiffs have failed to exhaust the grievance procedures under the CBA.

NYCHA's argument fails.  Even assuming that the CBA covers plaintiffs' claims,[55] NYCHA's contention that the CBA divests the federal courts

---

[53]    *Mihalik*, 715 F.3d at 109  (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78 (2011)).

[54]    *See* Memorandum of Law of Defendant New York City Housing Authority in Support of Its Motion to Dismiss ("Def. Mem.") at 5-7.

[55]    There is reason to doubt whether plaintiffs' claims are actually governed by the terms of the CBA.  The relevant portion of the CBA delineates a four-step grievance and dispute resolution process for, *inter alia*, "[a] claimed assignment of employees to duties substantially different from those stated in their job classifications."  Agreement Between the New York City Housing Authority and the City Employees Union, Local 237, I.B.T. ¶ 44(b), Ex. B to Declaration of David Marcinek in Support of Defendant New York City Housing Authority's Motion to Dismiss the Complaint ("Marcinek Decl.").  NYCHA asserts that plaintiffs were required to follow the CBA's dispute resolution procedures because their claims amount to a simple "out-of-title work" grievance – namely, that plaintiffs should be assigned a different job title and should be compensated more than they currently are.  *See* Def. Mem. at 5.  But NYCHA fundamentally

13

of subject matter jurisdiction to hear plaintiffs' employment discrimination claims is completely unfounded.  NYCHA relies primarily on a single state trial court decision from Connecticut,[56] but it is unclear how that case provides any support for NYCHA's argument.  Although the court in that case determined that it lacked subject matter jurisdiction to hear an employment lawsuit, the decision turned on an interpretation of Connecticut state law.[57]

NYCHA fails to cite any case linking the existence of a collective

---

mischaracterizes plaintiffs' claims.  Plaintiffs do not allege that they were required to perform duties substantially different from those stated in their job classification.  Rather, plaintiffs allege that NYCHA systematically under-compensated them – and disguised their activities by assigning them the job title of Caretaker rather than Plasterer Tenderer – due to a policy of racial discrimination. *See* Compl. ¶¶ 1, 27, 35-36.  Construing plaintiffs' allegations in the light most favorable to them, the Complaint alleges employment discrimination, not simply out-of-title work.  It is far from clear that the language of the CBA covers the alleged employment discrimination.

[56]     *See* Def. Mem. at 6 (citing *Labbe v. Hartford Pension Comm'n*, No. 89-362445, 1990 WL 275830 (Conn. Super. Ct. Oct. 25, 1990)).  *See also* Memorandum of Law of Defendant New York City Housing Authority in Further Support of Its Motion to Dismiss the Complaint and in Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint ("Reply Mem.") at 3-4 (discussing *Labbe*).

[57]     *See Labbe*, 1990 WL 275830, at *2-3 (citing *Administrators Ass'n v. Dow*, 511 A.2d 1012 (Conn. 1986)) ("Where the employee has failed to exhaust the appropriate grievance procedures provided in the collective bargaining agreement, the court lacks subject matter jurisdiction over the employee's claim and the suit is therefore subject to a motion to dismiss pursuant to [Connecticut] Practice Book § 142 *et seq.*").

14

bargaining agreement to depriving federal courts of subject matter jurisdiction to hear a claim of employment discrimination.[58] There is none. At best, the language of the CBA – if it indeed governs plaintiffs' claims – can provide the basis for either a motion to compel arbitration or an affirmative defense to plaintiffs' claims.[59] Even so, there is nothing to suggest that subject matter jurisdiction is lacking due to plaintiffs' failure to exhaust the CBA's grievance procedures. NYCHA's motion for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is therefore denied.

## B. Leave to Amend

NYCHA raises several arguments in connection with its motion to dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Although some of NYCHA's arguments are meritorious,

---

[58] NYCHA cites only one other case in support of its argument: *Acosta v. Potter*, 410 F. Supp. 2d 298 (S.D.N.Y. 2006). *See* Def. Mem. at 6. But the court in *Acosta* never held that a collective bargaining agreement divests the federal courts of subject matter jurisdiction; it simply noted that "an employee cannot avoid the private dispute resolution mechanism [of a collective bargaining agreement] simply by suing her employer in court." *Acosta*, 410 F. Supp. 2d at 308.

[59] *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (motion to compel arbitration pursuant to explicit language in a collective bargaining agreement); *Clayton v. International Union, United Auto., Aerospace, and Agric. Implement Workers of Am.*, 451 U.S. 679, 683 (1981) ("Both the union and the employer pleaded as an affirmative defense [plaintiff's] failure to exhaust the internal union appeals procedures.").

15

plaintiffs cross-move for leave to amend and have attached a Proposed Amended Complaint to their brief.[60]  I will therefore assess NYCHA's objections in the context of the allegations in the PAC.

### 1.    Municipal Liability

NYCHA correctly observes that plaintiffs' Section 1981 claim in the original Complaint fails because plaintiffs did not sufficiently allege municipal liability under *Monell*.[61]  The Complaint makes only conclusory allegations that NYCHA "evinces a policy and practice of selectively paying [plaintiffs] less than what they are entitled to, due to their minority status."[62]

However, plaintiffs attempt to cure these defects in the PAC. Specifically, the PAC alleges that NYCHA gives preferential treatment to Mason Helpers – who are predominantly white – by assigning them a job title and pay rate commensurate with what they would receive in the private sector, while simultaneously denying prevailing wages to all Plasterer Tenderers – who are

---

[60]    *See* Proposed Amended Complaint ("PAC"), Attachment to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss and Plaintiffs' Cross-Motion to Amend Their Complaint ("Opp. Mem.").

[61]    *See* Def. Mem. at 9-11.

[62]    Compl. ¶ 1.

overwhelmingly black and Hispanic.[63]  Considering the material allegations in the

PAC as true, it is plausible that the practice of assigning a lower compensation and

incorrect job title to minority workers constitutes a "persistent or widespread"

practice that has "the force of law."[64]  Moreover, the PAC sufficiently establishes a

causal connection between such a practice and plaintiffs' alleged injuries.[65]  The

PAC thus alleges facts that plausibly support municipal liability under *Monell*.

Accordingly, plaintiffs are granted leave to amend the Complaint with respect to

alleging municipal liability under *Monell*.

### 2.  Section 1981

NYCHA argues that plaintiffs fail to state a claim under Section 1981

because they cannot satisfy the final element of establishing a prima facie case of

employment discrimination: an inference that NYCHA discriminated against

plaintiffs based on their membership in a protected class.[66]  Plaintiffs attempt to

establish discrimination by alleging in the PAC that NYCHA gives preferential

---

[63]     *See* PAC ¶¶ 51-53.

[64]     *Green*, 465 F.3d at 80.

[65]     *See Cash*, 654 F.3d at 333-34 (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)) ("[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury.").

[66]     *See* Reply Mem. at 5-6.

treatment to the predominantly non-minority Mason Helpers.[67]  However, NYCHA

disputes that Mason Helpers are similarly situated to plaintiffs.  NYCHA points out

that (1) Mason Helpers, unlike plaintiffs, are subject to heightened experience and

educational requirements and (2) plaintiffs neither perform similar duties to Mason

Helpers nor report to the same supervisor.[68]

      Contrary to NYCHA's arguments, plaintiffs need not show that

Mason Helpers are identical in all respects to plaintiffs in order to establish that the

two groups are similarly situated.[69]  Moreover, "whether two people are similarly

situated is usually a question of fact for the jury."[70]  Accordingly, plaintiffs'

proposed claim under Section 1981 is sufficient to withstand a motion to dismiss.

Plaintiffs are therefore granted leave to amend their Section 1981 claim.

### 3.   NYCHRL

      NYCHA also argues that plaintiffs fail to state a discrimination claim

---

[67]    *See* PAC ¶¶ 51-53; Opp. Mem. at 6-7.

[68]    Reply Mem. at 6.

[69]    *See McGuinness*, 263 F.3d at 54 ("[W]here a plaintiff seeks to
establish the minimal prima facie case by making reference to the disparate
treatment of other employees, those employees must have a situation *sufficiently
similar* to plaintiff's to support at least a *minimal inference* that the difference of
treatment may be attributable to discrimination.") (emphasis added).

[70]    *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001).

under the NYCHRL.[71]  But if plaintiffs have stated a plausible claim under Section 1981, then their claim under the NYCHRL also stands.  As the Second Circuit has noted, the 2005 amendments to the NYCHRL created a "'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a *floor* below which the City's Human Rights law cannot fall.'"[72]  Thus, given that plaintiffs have sufficiently alleged a claim for employment discrimination under Section 1981, it stands to reason that their claim under the NYCHRL must also survive a motion to dismiss.  Plaintiffs may therefore maintain their claim under the NYCHRL as alleged in the PAC.

### 4.    Section 1983

Plaintiffs also seek leave to add a cause of action under Section 1983.[73]  The PAC specifically asserts that NYCHA's alleged violations of the New York State Constitution and section 220 of the New York Labor Law are the sole grounds for the Section 1983 claim.[74]  However, the Second Circuit has held that

---

[71]      *See* Reply Mem. at 5-6.

[72]      *Mihalik*, 715 F.3d at 109 (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009))

[73]      *See* PAC ¶¶ 69-80.

[74]      *See id.* ¶ 78.

"'violation[s] of state law [are] not cognizable under [Section] 1983.'"[75]  Plaintiffs are therefore denied leave to amend to add a Section 1983 claim that relies on alleged violations of state law.

However, plaintiffs state in their opposition papers that their proposed Section 1983 claim involves an alleged violation of the Equal Protection Clause of the Fourteenth Amendment.[76]  Raising a claim for denial of equal protection for the first time in a reply brief is not the proper way to amend a complaint.  Nonetheless, because plaintiffs have alleged facts in the PAC that plausibly support an equal protection claim, they are granted leave to amend to assert an equal protection claim.

### 5. Disparate Impact

Plaintiffs rely on a disparate impact theory of liability in connection with both their Section 1981 claim and their proposed Section 1983 claim.[77]  NYCHA correctly observes that disparate impact theories are not cognizable under

---

[75]    *Old St. George's LLC v. Bianco*, 389 Fed. App'x 33, 35 (2d Cir. 2010) (quoting *Pollnow v. Glennon*, 747 F.2d 496, 501 (2d Cir. 1985)).

[76]    *See* Plaintiffs' Reply Memorandum of Law in Further Support of Their Cross-Motion to Amend Their Complaint ("Pl. Reply Mem.") at 6-7.

[77]    *See* PAC ¶¶ 1, 17, 48, 74; Opp. Mem. at 6-7; Pl. Reply Mem. at 6-7.

either Section 1981 or the Equal Protection Clause of the Fourteenth Amendment.[78]

Leave to amend is therefore denied with respect to the portions of the PAC that

rely on a disparate impact theory of liability in connection with either the Section

1981 claim or for the proposed claim for denial of equal protection under Section

1983.

### 6.    Additional Parties

Plaintiffs seek leave to amend to bring this action on behalf of a class

of individuals consisting of "all Black and Puerto Rican members of Local 237 []

who have worked in the NYCHA, as Plasterer Helpers or Plaster Tenderers."[79]

Plaintiffs also seek leave to add the local chapter of their Union, Local 237 of the

International Brotherhood of Teamsters, as a defendant.[80]   NYCHA does not

---

[78]     *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 390 (1982) ("[Section] 1981, like the Equal Protection Clause [of the Fourteenth Amendment], can be violated only by purposeful discrimination."); *Patterson*, 375 F.3d at 226 ("[A] plaintiff pursuing a claimed violation of § 1981 or a denial of equal protection under § 1983 must show that the discrimination was intentional.").  *Cf. Texas Dep't of Housing and Cmty. Affairs v. Inclusive Cmtys. Project*, 135 S. Ct. 2507, 2521-22 (2015) (recognizing disparate impact claims under the Fair Housing Act); *Ricci v. DeStefano*, 557 U.S. 557, 577-78 (2009) (discussing the availability of disparate impact claims under Title VII of the Civil Rights Act of 1964).

[79]     PAC ¶ 12.  Plaintiffs estimate approximately one hundred class members. *See id.* ¶ 13.

[80]     *See id.* ¶ 11.

21

contend that it would be prejudiced by the joinder of these additional parties.
Plaintiffs are therefore granted leave to bring this case as a class action and to join
the Union as a defendant to this action.

## VI.   CONCLUSION

For the foregoing reasons, NYCHA's motion to dismiss for lack of
subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is
DENIED, and the motion to dismiss for failure to state a claim pursuant to Federal
Rule of Civil Procedure is GRANTED in part and DENIED in part.  Plaintiffs'
cross motion for leave to amend is GRANTED in part and DENIED in part.

Plaintiffs are directed to file an Amended Complaint in compliance
with this Opinion and Order within 21 days.  The Clerk of the Court is directed to
close this motion [Docket No. 10].  A conference is scheduled for August 24, 2015
at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:        New York, New York
              July 29, 2015

22

**-Appearances-**

**For Plaintiffs:**

Lee Sam Nuwesra, Esq.
Law Offices of Lee Nuwesra
60 East 42nd Street.
Ste. 1132
New York, NY 10156
(212) 370-8708

**For Defendants New York City Housing Authority:**

Diana Marie Murhpy, Esq.
Marni Blank, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, NY 10007
(212) 776-5244