UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BRIAN WYNN, JOHN WILLIAMS,
AWILDA GUZMAN, JOSE OTERO,
KEVIN FULTON, individually and on behalf
of all others similarly situated,

                Plaintiffs,

        - against -

NEW YORK CITY HOUSING
AUTHORITY and UNION LOCAL 237,
I.B.T.,

                Defendants.
------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/16

<u>OPINION AND ORDER</u>

14-cv-2818 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I.     INTRODUCTION**

        Brian Wynn, John Williams, Awilda Guzman, Jose Otero, and Kevin Fulton (the "Named Plaintiffs") bring this action alleging that their employer, the New York City Housing Authority ("NYCHA"), has been systematically under-compensating them due to their race and/or ethnicity. Plaintiffs assert causes of action for violations of their civil rights under Sections 1981 and 1983 of Title 42 of the United States Code as well as the New York City Human Rights Laws ("NYCHRL") against NYCHA. In addition, the plaintiffs allege that Local

1

237 of the International Brotherhood of Teamsters ("Local 237"), the representative union, "tacitly engaged in and/or encouraged such discriminatory conduct."[1]

Currently before the Court is plaintiffs' motion for certification of a class to pursue these claims. For the following reasons, that motion is DENIED.

## II. BACKGROUND

The Named Plaintiffs are Black and Hispanic members of Local 237 who have been employed as "Caretakers" by NYCHA since at least 2000.[2] NYCHA Caretakers perform various jobs and are assigned "internal designations which distinguish each Caretaker's specific job function."[3] For example, "Caretakers J primarily perform janitorial work, Caretakers G primarily perform groundskeeper work and [relevant here] Caretakers P perform work assisting

---

[1] Amended Complaint ¶ 48.

[2] Plaintiff Guzman ceased working for NYCHA after the filing of the present suit. The parties differ as to whether she retired or was terminated. *See* Defendant International Brotherhood of Teamsters, Local 237's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Local 237 Mem.") at 11; Plaintiffs' Reply Memorandum of Law in Further Support of Their Motion for Class Certification ("Reply Mem.") at 3. This dispute is immaterial for the present motion.

[3] Defendant New York City Housing Authority's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("NYCHA Mem.") at 2.

plasterers [and painters] within NYCHA's buildings."[4]

The Named Plaintiffs argue that while classified as Caretakers P, they actually performed the duties of – what are referred to in the private sector as – "plasterer tenders," but were not compensated as such.[5]  Plaintiffs argue that this systematic undercompensation resulted from racial discrimination against the mostly Black and Hispanic Caretakers P while, for example, the mostly White Mason Helpers were paid the prevailing wage in the private sector.[6]  Plaintiffs seek, inter alia, compensatory damages for unpaid wages and a judgment that Caretakers P should be compensated at the private sector prevailing wage for plasterer tenders.[7]

These employees – represented by Local 237 – have twice failed to

---

[4] *Id*.  *Accord* Ex. E ("2010 Agreement") to the Declaration of David Marcinek ("Marcinek Decl."), Deputy Director of NYCHA's Human Resources Department, in Opposition to Plaintiffs' Motion for Class Certification.

[5] Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification ("Pl. Mem.") at 1.  Importantly, while the undercompensation claim pegs the prevailing rate in the private sector as the amount of compensation due – the relevant metric for compensation under Section 220 of Article 8 of the New York Labor Law – violations of state law are not cognizable under Section 1983. *See Wynn v. New York City Hous. Auth.*, No. 14 Civ. 2818, 2015 WL 4578684, at *5 (S.D.N.Y. July 29, 2015) (denying leave to amend "to add a Section 1983 claim that relies on alleged violations of state law").

[6] *See* Amended Complaint ¶¶ 50-53.

[7] *See id*. at 16 ("Prayer for Relief").

attain reclassification.  *First*, a formal complaint to the Office of the Comptroller of the City of New York was denied in 2007.  *Second*, a petition for an audit by the Department of Citywide Administrative Services was denied in 2008.

Finally, on April 9, 2010, after failing to attain reclassification, Local 237 and NYCHA reached an agreement formally expanding the duties of Caretakers P who assist plasterers and "increasing the existing Caretaker 'P' assignment differential by a pro rata amount of $756.00 per annum."[8]  The agreement also established a training and assessment program for the expanded duties.[9]  This agreement did not, however, reclassify Caretakers P or achieve the full amount of remuneration sought.

### B. Class Definitions

Plaintiffs provide varying definitions of the class that they seek to certify.  *First*, in the Amended Complaint: "all Black and Puerto Rican members of Local 237, who have worked in the NYCHA, as Plasterer Helpers or Plasterer Tenders, within the relevant time periods applicable to the claims made herein."[10]  *Second*, in the Notice of Motion for Class Certification:  "all Minority Caretaker

---

[8]  2010 Agreement at 1-2 (notably, Caretakers P "assigned to assist Painters are not eligible for this increased amount").

[9]  *See id.* at 2.

[10]  Amended Complaint ¶ 12.

P's that assisted Plasterers who were or continue to be employed by the New York City Housing Authority, since April 9, 2010."[11]  *Third*, in their Memorandum of Law in Support of the instant motion: "all Minority Persons (Black and Hispanic), that were members of Union Local 237, I.B.T., and worked for Defendant New York City Housing as Caretaker P's, that assisted Plasterers, from April 2010 to the Present."[12]  *Fourth*, again in the Memorandum of Law in Support: "every Minority Plasterer Helper who has been subjected to Defendants' enforcement of the discriminatory pay disparity for such position, since April 2010."[13]

## III.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 23(a)

Rule 23(a) permits individuals to sue as representatives of an aggrieved class.  To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a), generally referred to as numerosity, commonality, typicality, and adequacy.[14]  District courts have broad discretion in

---

[11]   Notice of Motion for Class Certification ¶ 1.

[12]   Pl. Mem. at 1.

[13]   *Id.* at 10.

[14]   *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015).  In full, Rule 23(a) reads:

> Prerequisites. One or more members of a class may sue or be sued

5

deciding whether to certify a proposed class under Rule 23.[15]

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule — that is, [it] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."[16] Plaintiffs seeking class certification bear the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in Rule 23(a).[17] When assessing whether plaintiffs have met this burden, courts must take into account "all of the relevant evidence admitted at the class certification stage."[18] A court may certify a class only after determining that "whatever underlying facts are

---

> as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[15]   *See Parker v. Time Warner Entm't Co. L.P.*, 331 F.3d 13, 28 (2d Cir. 2003).

[16]   *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (emphasis in original).

[17]   *See New Jersey Carpenters Health Fund v. Rali Series 2006-Q01 Trust*, 477 Fed. App'x 809, 812 (2d Cir. 2012).

[18]   *In re IPO Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006).

relevant to a particular Rule 23 requirement have been established."[19] This rigorous analysis requires examining the facts of the dispute, not merely the pleadings, and it will frequently "entail some overlap with the merits of the plaintiff's underlying claim."[20]

### 1. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." In the Second Circuit, sufficient numerosity can be presumed at a level of forty members or more.[21] "The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible — only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."[22] Courts do not require evidence of exact class size to satisfy the numerosity requirement.[23]

---

[19] *Id.* at 41.

[20] *Wal-Mart*, 131 S. Ct. at 2551.

[21] *See Pennsylvania Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 116 (2d Cir. 2014) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

[22] *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007).

[23] *See Kaplan v. S.A.C. Capital Advisors*, No. 13 Civ. 2459, 2015 WL 8593478, at *3 (S.D.N.Y. Dec. 2, 2015) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)).

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality thus requires plaintiffs "to demonstrate that the class members 'have suffered the same injury.'"[24] Commonality further requires that the claims asserted "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[25]

### 3. Typicality

Under Rule 23(a)(3), "[t]ypicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events[] and each class member makes similar legal arguments to prove the defendant's liability.'"[26] The typicality requirement may be satisfied where "'injuries derive from a unitary course of

---

[24] *Wal-Mart*, 131 S. Ct. at 2551 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

[25] *Id.*

[26] *Central States*, 504 F.3d at 245 (quoting *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

conduct by a single system.'"[27]  Accordingly, "[t]he commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3)."[28]  A lack of typicality may be found in cases where the named plaintiff "was not harmed by the [conduct] he alleges to have injured the class"[29] or the named plaintiff's claim is subject to "specific factual defenses" atypical of the class.[30]

### 4. Adequacy

Adequacy under Rule 23(a)(4) "is twofold:  the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."[31]  Thus, the question of adequacy "'entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the

---

[27]   *In re Smith Barney Transfer Agent Litig*, 290 F.R.D. 42, 46 (S.D.N.Y. 2013) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

[28]   *Marisol A.*, 126 F.3d at 376.

[29]   *Ligon v. City of New York*, 288 F.R.D. 72, 79 (S.D.N.Y. 2013) (quoting *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. 2006)).

[30]   *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

[31]   *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

litigation.'"[32]

### 5.  Implied Requirement of Ascertainability

Finally, in addition to the express requirements of Rule 23(a), the Second Circuit recognizes an "implied requirement of ascertainability."[33]  "[T]he touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'"[34]  Accordingly, "[a] class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case."[35]

### B.  Federal Rule of Civil Procedure 23(b)(3)

If the requirements of Rule 23(a) are met, the court "must next determine whether the class can be maintained under any one of the three

---

[32]  *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

[33]  *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (citations omitted).

[34]  *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1760 (3d ed. 1998)).

[35]  *Id.* at 24-25 (quotation marks and citation omitted).

subdivisions of Rule 23(b)."[36] Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and class litigation "is superior to other available methods for the fair and efficient adjudication of the controversy."

The predominance inquiry focuses on whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"[37] "It is a more demanding criterion than the commonality inquiry under Rule 23(a)."[38] Class-wide issues predominate "'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"[39]

## IV. DISCUSSION

---

[36] *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008).

[37] *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

[38] *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (citing *Amchem*, 521 U.S. at 623-24).

[39] *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).

### A. Ascertainability

The very fact that counsel defines the class in at least four different ways makes the class unascertainable.[40] Indeed, even after this issue was pointed out in NYCHA's Opposition, plaintiffs ignored this point and failed to commit to a particular definition in their Reply Memorandum.[41] While the Court maintains ultimate power to "carve out an appropriate class" under Rule 23(c)(4), the Second Circuit has made clear that "[t]he court . . . is not obligated to implement Rule 23(c)(4) on its own initiative. . . . Thus, the district court's refusal to shoulder what, in the final analysis, is plaintiff's burden cannot be regarded . . . as an abuse of discretion."[42]

It would be particularly inappropriate for the Court to craft the specific class definition in the first instance where – as here – the plaintiffs have failed to do so themselves. To choose the most appropriate class definition where multiple class definitions are presented would reward the plaintiffs for presenting defendants with a moving target. For example, the definition from the Amended

---

[40] *See Johnpoll v. Thornburgh*, 898 F.2d 849, 852 (2d Cir. 1990) (affirming denial of class certification because the plaintiff "did not define the class he seeks to represent with sufficient particularity").

[41] *See* NYCHA Mem. at 11-12.

[42] *Lundquist v. Security Pac. Auto. Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993) (citations omitted).

Complaint refers to all "Plasterer Helpers or Plasterer Tenders"[43] and is susceptible the argument that the class is not readily ascertainable because the Complaint assumes the ultimate legal conclusion that Caretakers P were in fact acting as plasterer tenders. The second and third class definitions avoid this problem by referring to "Caretaker P's that assisted Plasterers," but include all those who have worked in this position since April 2010, making these definitions susceptible to the argument that this class is overbroad because the claims are governed by a three-year statute of limitations.[44, 45] Regardless, all of the proposed class definitions fail the typicality, adequacy, and predominance requirements as well.

    **B.    Commonality, Typicality, and Predominance**

Because the inquiries into commonality, typicality, and predominance overlap, I consider them together here. There is no doubt that common issues are present. For example, the Court must determine (1) whether the expanded duties of Caretakers P enumerated in the 2010 Agreement qualified them as private sector plasterer tenders, (2) whether the wage-setting decisions of NYCHA were based on

---

[43]    Amended Complaint ¶ 12.

[44]    Notice of Motion for Class Certification ¶ 1; Pl. Mem. at 1.

[45]    *See Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 430 (S.D.N.Y. 2009) (noting that the statute of limitations "call[s] into question the scope of [the] proposed class").

a pattern or practice of discrimination, and (3) whether Local 237 aided this allegedly discriminatory policy.  However, the claims of the class representatives are not and cannot be typical of every individual class member because those claims are subject to the individualized defense that a given class member never in fact performed the duties of a plasterer tender.  Successfully raising this defense would mean that some employees were paid the proper wage and therefore were not discriminated against.  Plaintiffs fail to even acknowledge this argument in their Reply Memorandum, restating only the legal conclusion that their claims are typical.

       For similar reasons, plaintiffs have failed to show that common issues predominate.  The second and third common questions – whether there was a pattern or practice of discrimination and whether Local 237 aided that practice – do little to resolve the question of liability without analyzing the circumstances of individual class members.  Even after resolving liability, the Court would have to make individualized damages determinations regarding to what extent and for how long a particular employee performed the duties of a plasterer tender.  Once again, rather than respond to this argument in their Reply, plaintiffs simply restate the relevant legal standard and conclude that "there should be no doubt that Plaintiffs

have met their eligibility for Class Certification."[46]

Plaintiffs have not carried their burden of proving that the claims of the class members are typical of the class as a whole or that common issues predominate.

**C.    Adequacy**

Finally, I have serious doubts that plaintiffs' counsel can adequately represent the interests of the proposed class. Adequacy of counsel is particularly important in the class action context where the class as a whole is bound by the result of the litigation. Here, both defendants have challenged counsel's adequacy.[47]

In response to this challenge, plaintiffs' counsel states in a conclusory manner that he is "pretty qualified."[48] To prove this point he cites to a list of past employment and civil rights cases he has participated in, marking certain cases as "Collective/Class Actions."[49] This list is interesting for several reasons. First and foremost, counsel states that this list was compiled by his sixteen-year-old

---

[46]    Reply Mem. at 6.

[47]    *See* NYCHA Mem. at 17; Local 237 Mem. at 13.

[48]    Reply Mem. at 4.

[49]    Ex. F ("Case List") to the Reply Declaration of Lee Nuwesra, plaintiffs' counsel, in Support of Class Certification.

daughter – apparently without any oversight from counsel. Had he done so, he may have noticed that the instant case was listed as class action litigation experience and that he double counted a case transferred from the Eastern District to the Southern District of New York. Perhaps most revealing about this list, however, is the fact that while some of the cases may have been filed as class actions, all of the listed cases settled or were dismissed prior to reaching the class certification stage. Indeed, as far as I can tell from the dockets of the listed cases, this is the first motion for class certification counsel has ever filed.

Even if this is not counsel's first motion for class certification, it might as well be. Quite aside from counsel's lack of class action experience, his performance in the present case has been so lacking as to raise doubts about his ability to diligently pursue the interests of the class.[50] *Kingsepp v. Wesleyan University*, a case in which counsel was found to be inadequate, is strikingly similar to this case.[51] There the court wrote:

> Plaintiff's memorandum in support of class certification provides little more than a recitation of the requirements of

---

[50] *See Auscape Int'l v. National Geographic Enters. Inc.*, No. 02 Civ. 6441, 2003 WL 23531750, at *4 (S.D.N.Y. July 25, 2003) ("'[I]n determining the adequacy of counsel, the court looks beyond reputation built upon past practice and examines counsel's competence displayed by present performance.'" (quoting *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 156 (S.D.N.Y. 2002))).

[51] *See* 142 F.R.D. 597 (S.D.N.Y. 1992).

>Rule 23 and conclusory statements that the requirements are met in this case. . . . Plaintiff's reply memorandum is also lacking. . . . The memorandum avoids any analysis or discussion of a number of weighty arguments raised by defendants in opposition to class certification, opting instead for . . . conclusory assertions.[52]

Counsel's inability to provide a consistent definition for the class he purports to represent or respond to the arguments made by the defendants leads me to conclude that counsel is not "'qualified, experienced and able to conduct the litigation.'"[53]

## V.   CONCLUSION

For the foregoing reasons, the motion for class certification is DENIED.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          January 19, 2016

---

[52]   *Id.* at 602.

[53]   *In re Flag Telecom Holdings*, 574 F.3d at 35 (quoting *Baffa*, 222 F.3d at 60).

17

- Appearances -

**Counsel for Plaintiffs:**

Lee Sam Nuwesra, Esq.
Law Offices of Lee Nuwesra
60 East 42nd Street, Suite 1132
New York, NY 10165
(212) 370-8707

**Counsel for New York City Housing Authority:**

Donna Marie Murphy, Esq.
New York City Housing Authority
250 Broadway, 9th Floor
New York, NY 10007
(212) 776-5244

Roger H. Briton, Esq.
Shawn Matthew Clark, Esq.
Jackson Lewis P.C. (Melville N.Y.)
58 South Service Road, Suite 250
Melville, NY 11747
(631) 247-0404

**Counsel for Local 237:**

Alexandra Joy Howell, Esq.
Marty Gerard Glennon, Esq.
Robert Thomas McGovern, Esq.
Archer, Byington, Glennon & Levine LLP
One Huntington Quadrangle
Melville, NY 11747
(631) 777-6920