|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------- X<br>                                                                              :<br>BRIAN WYNN, et al.,                                            :<br>                                              Plaintiffs,     :<br>                                                                              :<br>                       -against-                                      :<br>                                                                              :<br>NEW YORK CITY HOUSING                               :<br>AUTHORITY, et al.,                                             :<br>                                              Defendants.  :<br>------------------------------------------------------------- X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED:__3/8/2017__<br><br>14 Civ. 2818 (LGS)<br><br>**OPINION AND ORDER** |

LORNA G. SCHOFIELD, District Judge:

Plaintiffs Bryan Wynn, John Williams, Awilda Guzman, Jose Otero and Kevin Fulton bring this action against Defendants New York City Housing Authority ("NYCHA") and Union Local 237, I.B.T. (the "Union"). Plaintiffs allege that NYCHA violated their rights under 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. ("NYCHRL"), by paying them less than similarly situated workers as a result of their minority status and by failing to remedy the discrimination. Plaintiffs further allege that the Union "tacitly engaged in and/or encouraged" such discrimination. NYCHA and the Union independently filed motions for summary judgment. For the reasons discussed below, both motions are granted.

I.  **BACKGROUND**

The following facts are drawn from the parties' Rule 56.1 Statements and the evidence submitted by the parties in connection with the present motion. For purposes of this motion, all factual disputes are resolved, and all reasonable inferences are drawn, in favor of Plaintiffs. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

Plaintiff Brian Wynn is a black male who has been employed by Defendant NYCHA since 1996. Plaintiff John Williams is a black male who has been employed by NYCHA since

1997.  Plaintiff Awilda Guzman is a Hispanic female who worked for NYCHA from 1995 to 2013.  Plaintiff Jose Otero is a Hispanic male who has been employed by NYCHA since 2000.  Plaintiff Kevin Fulton is a black male who has been employed by NYCHA since 1995.  Each Plaintiff worked for NYCHA as a "Caretaker P" from at least 2003 to 2013, with Otero working in that role intermittently.

Defendant NYCHA is a municipal entity subject to the New York Civil Service Law.  *See* N.Y. Pub. Hous. Law § 32.  Pursuant to the Civil Service Law, New York City ("City") employees are classified according to job title, which determines their compensation level.  *See* N.Y. Civ. Serv. Law § 20.  Workers whose positions require that they take and pass a competitive examination comprise the Competitive Class.  *See id.* § 44.  Unskilled laborers whose positions do not require a competitive examination comprise the Labor Class.  *See id.* § 43(1).  The specific job titles that fall into each class are determined by the New York City Department of Citywide Administrative Services ("DCAS").  S*ee* N.Y. Civ. Serv. Law § 20; N.Y.C. Charter §§ 811, 814; Rules of the City of New York, Tit. 55, App. A, Rules II – IV, VII § 7.3.1.

City employees who are deemed to be "laborers, workmen, or mechanics" within the meaning of New York Labor Law § 220 are entitled to prevailing wages, *i.e.*, those wages paid for a day's work in the same trade or occupation in the private sector.  *See* N.Y. Lab. Law § 220(3)(a), (5); *Ramos v. SimplexGrinnell LP*, 740 F.3d 852, 856 (2d Cir. 2014); *see also Local 621, S.E.I.U., AFL-CIO v. City of New York*, No. 99 Civ. 9025, 2002 WL 31151355, at *1 (S.D.N.Y. Sept. 26, 2002) (City determines which employee titles are entitled to Labor Law § 220 prevailing wages).  DCAS has determined that titles classified as skilled titles in the Competitive Class are entitled to prevailing wages.  *See Hanley v. Thompson*, 838 N.Y.S.2d 59,

60 (1st Dep't 2007); *see also Corrigan v. Joseph*, 106 N.E.2d 593, 601 (N.Y. 1952) (workers who are members of the skilled, graded services of the Competitive Class are entitled to prevailing wages). Once DCAS has determined which job titles are entitled to prevailing wages, the City Comptroller ("Comptroller") determines the appropriate wages for each eligible job title. *See* N.Y. Lab. Law § 220(3)(c), (3-a).

As is relevant here, DCAS has authorized NYCHA to use the civil service title of "Caretaker (H.A.)" in the Labor Class. Within the Caretaker (H.A.) title, NYCHA has established internal job designations, including for Caretakers P. Caretakers P work for NYCHA assisting Plasterers. Standard duties of the position include setting up and cleaning up for Plasterers. Caretakers P are not required to take a competitive examination prior to employment, and are not paid prevailing wages for their work. The private sector version of a Caretaker P is a Plasterer Tender or Plasterer Helper. Unlike Caretakers P, private sector Plasterer Tenders also work on the exterior of buildings and mix plaster outside with a machine that Caretakers P do not use. Private sector Plasterer Tenders earn prevailing wages amounting to several thousand dollars per year more than Caretakers P. In 2000, the Comptroller issued an annual report which includes a number of prevailing wage determinations. The report states that a consent determination was entered for the title Plasterer Helper, but does not state the outcome of the determination or what duties a "Plasterer Helper" performs.

As a result of their positions as Caretakers P, Plaintiffs are or were each members of Defendant Union. The Union represents Caretakers P in collective bargaining with NYCHA, which determines the Caretakers' compensation. The Union also represents other NYCHA workers including Mason's Helpers, who assist Bricklayers by setting up scaffolds, mixing mortar, cleaning the work site and lugging tools, among other tasks. Mason's Helpers are

3

members of the skilled, Competitive Class of the civil service, and must take a competitive examination prior to employment. As a result of their status as skilled employees, Mason's Helpers are entitled to prevailing wages. According to Plaintiffs, Mason's Helpers do less work than Caretakers P. While approximately 94 percent of Caretakers P are black or Hispanic, over 60 percent of Mason's Helpers are white.

In 2007, following complaints by Caretakers P, the Union's attorney filed a complaint with the Comptroller, seeking prevailing wages for Caretakers P. The Comptroller rejected the Union's complaint in February 2008, stating that Caretakers are not entitled to prevailing wages, as they are neither classified within the Competitive Class of the civil service nor employed by public work contractors or subcontractors. In March 2008, the Union's attorney requested that DCAS reclassify Caretakers P into a job title eligible for prevailing wages. DCAS rejected the Union's request in May 2008, stating that neither "Caretaker P" nor "Plasterer Helper" was a recognized title in the skilled class of the civil service and that Caretakers P are not entitled to be classified as skilled workers subject to a prevailing wage.

In April 2010, the Union and NYCHA entered into an agreement that provided for an expansion of duties and an increase in pay for Caretakers P (the "Agreement"). As a result of their expanded duties, Caretakers P were expected to use tools, mix plaster, engage in demolition and work side by side with the Plasterers applying plaster and wire, among other new tasks. At no time did the expanded duties require Plaintiffs to work on the exterior of buildings or with certain machines used by private sector Plasterer Helpers.

The Agreement also provides for the development and implementation of a training program for the expanded duties, and states that NYCHA "agrees to use its best efforts to petition" DCAS to create a "Plasterer's Helper (H.A.)" title incorporating the expanded duties. It

further provides that NYCHA and the Union will jointly ask DCAS to consider the expanded duties as creditable experience toward meeting the qualification requirements of the skilled Plasterer title.

Following the adoption of the Agreement, NYCHA created a training program related to the expanded duties and an assessment program by which Caretakers P would be evaluated on their progress in learning and performing their expanded duties. Only 42 percent of Caretakers P passed their initial assessment. More Caretakers P later passed the second assessment test. While NYCHA has intermittently referred to its Caretakers P as Plasterer Helpers, NYCHA has not petitioned DCAS to create a formal Plasterer's Helper title since the Agreement was signed. Nor have NYCHA and the Union jointly petitioned DCAS to reduce the amount of time for a Caretaker P to become a Plasterer.

## II. LEGAL STANDARD

Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016). Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *See Wright*, 831 F.3d at 71–

72. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 248; *accord Pippins v. KPMG, LLP*, 759 F.3d 235, 252 (2d Cir. 2014).

In discrimination cases, a court may not grant summary judgment merely because "the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *Danzer v. Norden Sys.*, 151 F.3d 50, 54 (2d Cir. 1998). Instead, "[t]here must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Id*. (internal citation omitted). "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).

## III. DISCUSSION

Plaintiffs allege that NYCHA discriminated against them in violation of Section 1981, Section 1983 and the NYCHRL by paying them less than similarly situated white NYCHA employees and failing to seek reclassification of their job title under the Agreement. Plaintiffs further allege that the Union failed to rectify this discrimination in violation of Section 1981 and the NYCHRL. For the reasons discussed below, summary judgment is granted to Defendants on each of Plaintiffs' claims.[1]

---

[1] In their response brief, Plaintiffs state that while they do not assert a claim for disparate impact under the NYCHRL or Title VII, they do not waive their right to raise such a claim at a later date. Plaintiffs may not amend their Amended Complaint to raise any disparate impact claims in this case. First, any hypothetical NYCHRL disparate impact claim would arise under state law in a case where no federal claims remain. *See, e.g.*, *Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 119 (2d Cir. 2006) (declining to exercise jurisdiction over state law claims where all federal claims were dismissed). Second, permitting Plaintiffs to add a new claim (or claims) nine months after the close of discovery and following extensive summary judgment briefing

A.      **Discrimination Claims Under Federal Law**

Employment discrimination claims under Sections 1981 and 1983 are analyzed using the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (*McDonnell Douglas* framework applies to Section 1981 claims in addition to Title VII claims); *Sorlucco v. N.Y.C. Police Dep't*, 888 F.2d 4, 6–7 (2d Cir. 1989) (*McDonnell Douglas* framework also applies to Section 1983 claims). At step one, Plaintiffs must present a prima facie case of discrimination. Plaintiffs can establish a prima facie case without evidence sufficient to show discriminatory motivation if they can show (1) that they are "member[s] of a protected class," (2) that they were "qualified for employment in the position," (3) that they "suffered an adverse employment action," or in this case, disparate wages, and (4) that they have "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Doe v. Columbia Univ.*, 831 F.3d 46, 54 (2d Cir. 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). "[S]uch a showing will raise a temporary 'presumption' of discriminatory motivation." *Id.*

If Plaintiffs successfully present a prima facie case of discrimination, the burden shifts to Defendants to offer legitimate and nondiscriminatory reasons for the alleged discriminatory action. Once Defendants make such a showing, the presumption falls away and the Plaintiffs must provide sufficient evidence for a reasonable jury to conclude that the proffered reason was not the true reason for the action and that Defendants intentionally discriminated against them.

---

would be unduly prejudicial to Defendants. *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (district court did not err in denying leave to amend complaint where discovery had closed, defendants had filed for summary judgment, and nearly two years had passed since the filing of the initial complaint).

*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016) ("a court should examine the record as a whole . . . to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer.").

### 1. Claims Against NYCHA

In order to prevail on an employment discrimination claim against a municipal agency like NYCHA, Plaintiffs must demonstrate that (1) their rights were violated within the meaning of Sections 1981 or 1983 and (2) that this violation "was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989) (referencing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Carrero v. N.Y.C. Hous. Auth.*, 890 F.2d 569, 576–77 (2d Cir. 1989) (Section 1983 claims against NYCHA can only be brought if the alleged deprivation of rights occurred pursuant to NYCHA custom or policy). As Plaintiffs cannot demonstrate that their rights were violated within the meaning of Sections 1981 and 1983, their claims fail.

#### a. Alleged Wage Discrimination

Plaintiffs allege that NYCHA discriminated against them by paying them lower wages than Mason's Helpers, who are predominantly white. Where plaintiffs seek to establish their prima facie case "by making reference to the disparate treatment of other employees, those employees must have a situation sufficiently similar to plaintiff[s'] to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001); *accord Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014) (raising an inference of discrimination "requires the plaintiff to show that the employer treated him or her less favorably than a similarly situated employee outside of the

8

protected group").

Though the burden of establishing a prima facie case of discrimination is minimal, s*ee, e.g.*, *Walsh*, 828 F.3d at 75, Plaintiffs have not met that burden here. Plaintiffs argue that they are similarly situated to Mason's Helpers, and that NYCHA's failure to pay Plaintiffs prevailing wages is a result of race discrimination, given that Mason's Helpers are predominantly white and Caretakers P are predominantly black and Hispanic. Yet Plaintiffs are not similarly situated to Mason's Helpers. Plaintiffs are unskilled members of the Labor Class who need not take a qualifying exam prior to starting work. Mason's Helpers are skilled members of the Competitive Class whose skills are tested and who must prove their competence before beginning public employment.

Where the New York Civil Service Law provides that employees should be treated differently, those employees are not similarly situated for purposes of evaluating discrimination claims. *See, e.g.*, *Swanston v. Cahill*, 25 F. App'x 38, 40 (2d Cir. 2001) (minority employee was not similarly situated to non-minority employee whose status as a veteran required differential treatment under civil service laws); *Cabrera v. New York City*, 436 F. Supp. 2d 635, 645 (S.D.N.Y. 2006) (individuals were not similarly situated where only some of them "held underlying civil service status"); *Manessis v. N.Y.C. Dep't of Transp.*, No. 02 Civ. 359, 2003 WL 289969, at *10 (S.D.N.Y. Feb. 10, 2003), *aff'd sub nom. Manessis v. Chasin*, 86 F. App'x 464 (2d Cir. 2004) (plaintiff was not similarly situated to employee who was promoted after taking a civil service exam for new position when plaintiff did not take exam); *see also, e.g.*, *Cruse v. G & J USA Publ'g*, 96 F. Supp. 2d 320, 326 (S.D.N.Y. 2000) (employees were not similarly situated where they performed some of the same tasks but had different job titles and training). Because Caretakers P and Mason's Helpers have different civil service statuses, they are not

similarly situated.  Plaintiffs thus cannot present a prima facie case that NYCHA discriminated against them by paying Mason's Helpers a statutorily mandated prevailing wage.

That NYCHA paid Plaintiffs less than private sector Plasterer Tenders is likewise insufficient to establish a prima facie case of discrimination.  The undisputed record shows that private sector Plasterer Tenders have greater responsibilities than Caretakers P, including working on the outside of buildings and working with machines that Caretakers P do not use.

Plaintiffs rely on the declaration of Alonzo Leflore to argue that NYCHA engaged in discrimination because Plaintiffs are qualified to perform the duties of Plasterer Helper, were informed that they would receive a prevailing wage and were entitled to that wage as a result of their expanded duties.  The Leflore declaration does not provide any evidence of race discrimination.  As explained above, Caretakers P are not similarly situated to either Mason's Helpers or private sector Plasterer Tenders.  Nothing in the Leflore declaration changes that fact.

Plaintiffs' argument that NYCHA engaged in discrimination because the Comptroller had already declared the Plasterer Helper title to be a prevailing wage title in 2000 likewise fails.  First, Plaintiffs have adduced no evidence that the Comptroller made such a finding.  The document they cite merely states that a consent determination was reached as to the title of Plasterer Helper, not the result of the determination.  Second, even assuming that Plasterer Helpers are entitled to prevailing wages, Plaintiffs have adduced no evidence to show that they meet the definition of a private sector Plasterer Helper.  Indeed, the duties of Caretakers P and private sector Plasterer Tenders are not the same in all material respects, as discussed above.

Consequently, NYCHA is entitled to summary judgment on Plaintiffs' federal wage discrimination claims.

### b. Failure to Abide by the Terms of the Agreement

Plaintiffs' memorandum of law in opposition to summary judgment also implies that NYCHA discriminated against them by failing to petition DCAS to create a job title that would entitle Plaintiffs to prevailing wages, contrary to the "best efforts" provision in the Agreement. As an initial matter, the Agreement does not state that the new "Plasterer's Helper (H.A.)" title would lead to prevailing wages. It simply states that NYCHA would use its best efforts to petition DCAS for the creation of such a title incorporating the expanded duties.

Moreover, Plaintiffs have adduced no evidence that NYCHA's failure to petition DCAS was motivated by intentional race-based discrimination. *See, e.g.*, *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional"). As Plaintiffs have failed to present evidence that would support a prima facie case of discrimination, summary judgment is granted to NYCHA on this claim.

### c. Alleged Equal Protection Violation

Plaintiffs further allege that NYCHA violated Section 1983 and the Fourteenth Amendment by failing to pay Plaintiffs their "Constitutional[ly] appropriate and commensurate pay" on account of their race. As explained above, Plaintiffs have provided no evidence that NYCHA paid them an inappropriate amount in light of their DCAS classification, nor have Plaintiffs provided any evidence that NYCHA acted in a discriminatory manner. NYCHA is therefore entitled to summary judgment on Plaintiffs' equal protection claim.

### 2. Claims Against the Union

Plaintiffs allege that the Union discriminated against them by tacitly endorsing or encouraging NYCHA's discriminatory behavior. In order to establish a prima facie case of

discrimination by the Union, Plaintiffs must show that (1) the Union breached its duty of fair representation to Plaintiffs and (2) the Union's conduct was motivated by racial animus.  *See McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x. 44, 49 (2d Cir. 2010); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 Civ. 7584, 2011 WL 4000997, at *13 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

Plaintiffs cannot make out a prima facie case that the Union discriminated against them in violation of Sections 1981 or 1983.  In the first instance, because Plaintiffs have not demonstrated that NYCHA engaged in discriminatory behavior, Plaintiffs cannot demonstrate that the Union violated Section 1981 or Section 1983 by tacitly approving that behavior.  Moreover, while Plaintiffs argue that the Union breached its duty of fair representation by failing to enforce Plaintiffs' rights under the Agreement and acquiescing to NYCHA's discrimination of Plaintiffs, Plaintiffs offer no evidence of discriminatory behavior or racial animus on the part of the Union.  Plaintiffs specifically mention race only to allege that the Union treated Mason's Helpers more favorably than Caretakers P, but as explained above, differences in treatment between Caretakers P and Mason's Helpers do not provide evidence of racial animus because those groups are not similarly situated.  Consequently, the Union is also entitled to summary judgment on Plaintiffs' federal discrimination claims.

### B. Discrimination Claims Under the NYCHRL

Lastly, Plaintiffs assert that both NYCHA and the Union violated the NYCHRL by denying Plaintiffs the same wages as private sector Plasterer Tenders and failing to rectify the discrimination.  The NYCHRL prohibits employers or agents from discriminating against persons "in compensation or in terms, conditions or privileges of employment" based on race.  N.Y.C. Admin. Code § 8-107(1)(a)(3).  The NYCHRL "should be construed liberally for the

accomplishment of the uniquely broad and remedial purposes thereof." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015). Courts "must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." *Id.* Summary judgment is appropriate on a NYCHRL claim "if there is no genuine dispute as to any material fact regarding plaintiff's claim and the employer's affirmative defense." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).

Here, Plaintiffs have provided no evidence to show that Defendants discriminated against Plaintiffs on the basis of their race. Thus, Defendants are also entitled to summary judgment on Plaintiffs' NYCHRL claims.

## IV.    CONCLUSION

For the foregoing reasons, both NYCHA's motion for summary judgment and the Union's motion for summary judgment are GRANTED.

The Clerk of Court is respectfully directed to close the motions at Docket No. 87 and Docket No. 92, and to close this case.

Dated: March 8, 2017
       New York, NY

*[signature]*
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE